UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KAVA CULTURE FRANCHISE
GROUP CORP., a Florida corporation,

    Plaintiff,

v.                                              Case No:   2:23-cv-278-JLB-KCD

DAR-JKTA ENTERPRISES LLC, a
Texas limited liability company,
DARRIGAN INVESTMENTS LLC,
a Texas limited liability company,
DAVID DARRIGAN, an individual,
JOHNNY QUBTY, an individual,

    Defendants.
_____/

## ORDER

This matter comes before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 4) (the "Motion"). The temporary restraining order requested in the Motion is **GRANTED in part** and **DENIED in part** as set forth below.

## BACKGROUND[1]

Kava Culture Franchise Group Corp. ("Kava Culture") is a Florida corporation and the franchisor of a system providing a "fast-casual kava and elixir bar experience to the general public." (Doc. 2 at ¶¶ 5, 10). "Kava Culture licenses others to operate kava and elixir bars under the federally-registered trademark,

---

[1] This background section is based on facts alleged in and documents attached to the Verified Complaint.

1

'Kava Culture', . . . in the operation of Kava Culture Kava Bars." (Doc. 2 at ¶ 10). The mark (the "Kava Culture Mark") consists of the words "Kava Culture" in "standard characters without claim to any particular font, style, size, or color." (Doc. 2-1 at 1). "No claim is made to the exclusive right to use the following apart from the mark as shown: 'KAVA'". (Doc. 2-1 at 1). Kava Culture alleges that it "has a vital economic interest in protecting its name and the Kava Culture Mark" and that "[t]he preservation and protection of its name and the Kava Culture Mark is essential [to] the maintenance of the quality of Kava Culture Kava Bars and the goodwill and reputation associated with them." (Doc. 2 at ¶ 18).

On or about May 20, 2021, Kava Culture entered into a franchise agreement with defendant David Darrigan for the operation of a Kava Culture Kava Bar located in Denton, Texas (the "Denton Franchise Agreement"). (Doc. 2 at ¶ 19; Doc. 2-2). On or about March 16, 2022, Kava Culture entered into a franchise agreement with Dar-Jkta in connection with the operation of a Kava Culture Kava Bar located in North Dallas, Texas (the "North Dallas Franchise Agreement" and, together with the Denton Franchise Agreement, the "Franchise Agreements"). (Doc. 2 at ¶ 20; Doc. 2-3). Plaintiff alleges and, having reviewed the Franchise Agreements, the Court agrees, that "[f]or the purposes of [the] Verified Complaint, the terms of the Franchise Agreements are substantially similar." (Doc. 2 at ¶ 20 n.1). The North Dallas Franchise Agreement was personally guaranteed by Mr. Darrigan and Mr. Qubty. (Doc. 2-3 at 41–42).

Plaintiff alleges that it provided "extensive assistance and training" to Dar-Jkta and Mr. Darrigan. (Doc. 2 at ¶ 22). Although Plaintiff alleges that it assisted Dar-Jkta in opening the North Dallas location, as of the date of the filing of the Complaint, the location subject to the North Dallas Franchise Agreement is not open. (Doc. 2 at ¶ 23). On March 24, 2023, Mr. Darrigan advised Plaintiff that Dar-Jkta was putting the North Dallas location "on hold." (Doc. 2 at ¶ 23). On or around that same day, Plaintiff alleges, Defendants created a website for their competitor business, www.lovethekavabar.com. (Doc. 2 at ¶ 24). Additionally, Plaintiff alleges that both locations received "extensive training on Kava Culture's proprietary recipes, which undergo rigorous testing and set Kava Culture apart from its competitors." (Doc. 2 at ¶ 25).

Plaintiff alleges that Mr. Darrigan became in default of the Denton Franchise Agreement in April 2023 because he "failed to operate the Licensed Business under the Marks and failed to properly display the Marks." (Doc. 2 at ¶ 26). On April 17, 2023 Plaintiff sent Mr. Darrigan a Notice of Default and Termination. (Doc. 2 at ¶ 27; Doc. 2-4). The notice of default advised Mr. Darrigan that if he failed to cure the default in 72 hours (i.e., before 6:01 p.m. EST on Thursday, April 20, 2023), the Denton Franchise Agreement would automatically terminate at that time. (Doc. 2-4 at 1; *see also* Doc. 2-2 at 21, § 15.02 ("Franchisor may terminate this Agreement upon at least 72 hours' Notice and opportunity to cure . . . .")).

Plaintiff alleges that Mr. Darrigan failed to cure the default within the required time and so the Denton Franchise Agreement was terminated at 6:01 p.m. EST on Thursday, April 20, 2023. (Doc. 2 at ¶¶ 28–29).

Plaintiff alleges that Mr. Darrigan continues to operate a business called "The Kava Bar," with a similar logo. (Doc. 2 at ¶¶ 31–32). And when asked why Mr. Darrigan was no longer operating as Kava Culture, he allegedly wrote: "This is the owner, David. A this time the only thing that can be said is the following response from my lawyer: 'we had no choice but to remove the illegal franchise brand from the premises.'" (Doc. 2 at ¶ 33).

Also in April 2023, Plaintiff alleges that Dar-Jkta became in default of the North Dallas Franchise Agreements because Dar-Jkta "failed to operate the Licensed Business under the Marks and failed to properly display the Marks at all times in full compliance with the Franchise Agreement and the Manual." (Doc. 2 at ¶ 34). On April 17, 2023 Plaintiff send Dar-Jkta a Notice of Default and Termination. (Doc. 2 at ¶ 35; Doc. 2-5). The notice of default advised Dar-Jkta that if it faield to cure the default in 72 hours (i.e., by 6:01 p.m. EST on Thursday, April 20, 2023), the North Dallas Franchise Agreement would automatically terminate at that time. (Doc. 2-5 at 1; *see also* Doc. 2-3 at 24, § 15.02 ("Franchisor may terminate this Agreement upon at least 72 hours' Notice and opportunity to cure . . . .")).

Plaintiff alleges that Dar-Jkta failed to cure the default within the required time and so the North Dallas Franchise Agreement terminated at 6:01 p.m. EST on Thursday, April 20, 2023. (Doc. 2 at ¶¶ 36–37). Plaintiff further alleges that

4

"[a]lthough Dar-Jkta altered their name on social media, as of this filing, the to-be-franchised location remains, for all intents and purposes, the same – i.e., a Kava Culture Kava Bar." (Doc. 2 at ¶ 38).

Plaintiff alleges that Defendants "quite simply stole from Kava Culture." (Doc. 2 at ¶ 39). Plaintiff points to a statement on Defendants' website that "[they] started The Kava Bar after discovering the magic of the beverage during the COVID-19 Pandemic. . . . Since November 2021, we've been committed to providing a welcoming and judgment-free atmosphere." (Doc. 2 at ¶ 40). Plaintiff indicates that this cannot be true because Defendants were serving Kava <u>Culture</u>, not Kava <u>Bar</u> customers since November 2021. (Doc. 2 at ¶ 41). Plaintiff also alleges that Defendants' locations "continued using Kava Culture's Mark, recipes, methods, color scheme, System, and many other aspects of a Kava Culture Kava Bar." (Doc. 2 at ¶ 42). Moreover, Plaintiff alleges that The Kava Bar is offering merchandise similar to what Defendants previously used at their Kava Culture Kava Bar location. (Doc. 2 at ¶ 44). Plaintiff also states that "the design of the presently-unopen North Dallas Location is identical to that of a Kava Culture Kava Bar . . . as seen as of April 19, 20[2]3." (Doc. 2 at ¶ 45). Plaintiff also alleges that Defendants are offering identical discounts, have replaced a Kava Culture branded sign with a Kava Bar sign, and are using "near-identical information, logos and designs for their literature and materials." (Doc. 2 at ¶¶ 46–48).

## LEGAL STANDARD

A party seeking a temporary restraining order must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). Controlling Eleventh Circuit precedent is clear that "injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion." *Id.* at 1226 (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc)). Plaintiff argues that it is likely to succeed on the merits of its claims seeking equitable relief against Defendants for breach of the Franchise Agreement (Count IV), violations of Kava Culture's trademark rights and competition law (Counts I – III, V, VI), and unjust enrichment (Count VII). (Doc. 4 at 19). The Court will analyze each claim in turn.

## ANALYSIS

### I. Breach of the Franchise Agreements

> *i.   Plaintiff has established a likelihood of success on the merits of its breach of contract claim.*

Under Florida law, a covenant not to compete is valid if it is reasonably limited in time and area, and furthers a "legitimate business interest." *R.J. Gators Franchise Systems, Inc. v. MBC Restaurants, Inc.*, No. 2:05-cv-00494-VMC-DNF, 2005 WL 4655379, at *4 (M.D. Fla. Nov. 9, 2005). "A legitimate business interest specifically includes the protection of trade secrets, confidential business

6

information, and goodwill associated with a trademark, service mark or trade dress." *Id.* (citation omitted).

The Franchise Agreements contain the following covenant against competition:

> Franchisee covenants and agrees that, for a period of twenty-four (24) months following the later date of: (a) the Effective Date of any termination, expiration or non-renewal . . ., or (b) the last date on which Franchisee, directly or indirectly, violated the terms of this Paragraph 16.02 . . . Franchisee will not, individually or together with another, . . .
>
> a. Compete with Franchisor or any franchisee of Franchisor within a seventy-five mile radius of the approved location of Franchisee's Licensed Business, as it existed immediately before the Termination Date or within a seventy-five mile radius of any then-existing KAVA CULTURE® Bar, in the operation of any retail business offering and selling Kava beverages and other complementary Items, any aspect of such Licensed Business as it exists on the Termination Date, or any business substantially similar thereto or tending to compete for the same customers as Franchisor or its franchisees.

(Doc. 2-2 at 23, § 16.02.01a; Doc. 2-3 at 26, § 16.02.01a). The Franchise Agreements also include a non-solicitation clause (Doc. 2-2 at 23, § 16.02.01b; Doc. 2-3 at 26, § 16.02.01b), but it does not appear that Plaintiff's breach of contract claim applies to such clauses because such clauses are not specifically mentioned in the complaint. (Doc. 2 at ¶¶ 82–88).

Both a 75-mile restriction and a 2-year time limit are reasonable. *See, e.g., Graphic Business Systems, Inc. v. Rogge*, 418 So. 2d 1084 (Fla. 2d DCA 1982) (finding a two-year time restriction reasonable and upholding a 75-mile radius

7

geographic restriction); *CiCi Enterps, LP v. Four Word Motion, LLC*, No. 6:16-cv-1679-Orl-41KRS, 2016 WL 9244626, at *8 (M.D. Fla. Oct. 17, 2016) ("[T]his Court is convinced that the Non-Competition Covenant, which has a two-year time period and twenty-mile geographic limitation, and which is narrow in scope—only precluding Defendants from participating in the operation of a pizza or Italian-foods restaurant—is reasonable in light of Plaintiff's protectable business interests."); *Medi-Weightloss Franchising USA, LLC v. Medi-Weightloss Clinic of Boca Raton, LLC*, No. 8:11-cv-2437-T-30MAP, 2012 WL 260776, at *1 (M.D. Fla. Jan. 3, 2012) (approving covenant against competition that restricted competition within a 25-mile radius of the franchise location and other franchise businesses); *Medi-Weightloss Franchising USA, LLC v. Sadek*, No. 8:09-cv-2421-T-24MAP, 2010 WL 1837767, at *4 (M.D. Fla. Mar. 11, 2010) (holding that a restrictive covenant for one year or less is reasonable and for more than three years is unreasonable as to a former franchisee); *R.J. Gators Franchise Systems, Inc.*, 2005 WL 4655379, at *4 (finding that a covenant restricting a defendant from operating a competing business within ten miles of the former franchise for a period of 24 months contained reasonable temporal and geographic restrictions). The Court also finds the restriction reasonable because it is limited to "the operation of any retail business offering and selling Kava beverages and other complementary Items, any aspect of [the] Licensed Business as it exists on the Termination Date, or any business substantially similar thereto or tending to compete for the same customers

8

as Franchisors or its franchisees." (Doc. 2-2 at 23, § 16.02.01a; Doc. 2-3 at 26, § 16.02.01a).

Plaintiff alleges that Defendants breached the covenant not to compete by: (i) "continuing to use the Kava Culture Mark and Kava System following termination of the Franchise Agreements;" (ii) "continuing to operate a Kava Bar at the site of the formerly-franchised Kava Culture Kava Bar, in violation of the covenants contained in the Franchise Agreement;" and (iii) "failing to assign the leases, telephone numbers, and other assets, to Plaintiff." (Doc. 2 at ¶¶ 84–86).

Plaintiff's legitimate business interests include, "at least, protection of: (1) trademarks, service marks and trade dress and the goodwill associated therewith, and (2) valuable confidential information belonging to the Plaintiff." *R.J. Gators Franchise Systems, Inc.*, 2005 WL 4655379, at *5 (citation and quotation marks omitted); (*see* Doc. 2 at ¶ 18 ("Kava Culture has a vital economic interest in protecting its name and the Kava Culture Mark. The preservation and protection of its name and the Kava Culture Mark [are] essential [to] the maintenance of the quality of Kava Culture Kava Bars and the goodwill and reputation associated with them.")).

For the foregoing reasons, Plaintiff is likely to succeed on the merits of its breach of contract claim as to the Denton Franchise Agreement. The Court cannot find that Plaintiff is likely to succeed on the merits of its breach of contract claim as to the North Dallas Franchise Agreement because Plaintiff admits that the North Dallas Location is "not open as of the filing of this suit . . . ." (*See* Doc. 2 at ¶ 23).

9

      *ii.*    *Plaintiff has established a presumption of irreparable harm.*

"The Eleventh Circuit deems injunctions the normal and favored remedy for violations of restrictive covenants because monetary damages are typically quite difficult to establish and often cannot adequately compensate for that type of breach." *R.J. Gators Franchise Systems, Inc.*, 2005 WL 4655479, at *5. "The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." *U.S. Lawns, Inc. v. Landscape Concepts of CT, LLC*, 6:16-cv-929-Orl-41DAB, 2016 WL 9526340, at *8 (M.D. Fla. Oct. 31, 2016). Having established that the non-compete clause in the Franchise Agreements is enforceable and that Defendants violated that clause, the Court finds that Plaintiff is entitled to a presumption of irreparable injury. *See Medi-Weightloss Franchising USA, LLC*, 2010 WL 1837767, at *6 ("[The franchisor] has shown that if a preliminary injunction does not issue, it will have to compete with former franchisees . . . who agreed not to engage in such competition, . . . will suffer possible dilution and confusion associated with its . . . products and services, and will prevent [the franchisor] from enforcing its agreements with other franchisees. Accordingly, [the franchisor] has met its burden as to the irreparable harm prerequisite.").

      *iii.*    *The injury to Plaintiff without a temporary restraining order outweighs any potential injury to Defendants if a temporary restraining order is entered.*

"Generally, a franchisee that has breached the terms of its franchise agreement cannot then complain of harm from an injunction preventing further

10

violations of the agreement." *Winmark Corp. v. Brenoby Sports, Inc.*, 32 F. Supp. 3d 1206, 1224 (S.D. Fla. 2014) (citing *Dunkin' Donuts Franchised Restaurants LLC v. D & D Donuts, Inc.*, 566 F. Supp. 2d 1350, 1361 (M.D. Fla. 2008)).

Plaintiffs argue:

> The denial of an injunction will adversely affect Plaintiff's other franchisees that play by the rules and abide by the terms of franchise agreements. Licensed franchisees have placed their trust in Plaintiff to protect their substantial investment in the system, and have a significant interest in preventing former franchisees from operating without following the franchise's established policies and procedures.

(Doc. 4 at 26–27). The Court agrees and finds that the current injury to Plaintiff outweighs any potential injury to Defendants if a temporary restraining order is entered.

### iv. *The public interest would be served by the entry of the temporary restraining order.*

The public interest will not be disserved by the entry of a temporary restraining order because "[i]t is not in the public interest to condone [Defendants'] material breach of the [Franchise] Agreement." *See Burger King Corp. v. Lee*, 766 F. Supp. 1149, 1157 (S.D. Fla. 1991).

## II. Violation of Kava Culture's trademark rights

### i. *Plaintiff has not established a likelihood of success on the merits of its trademark infringement or trademark dilution claims.*

Under the Lanham Act, "a defendant is liable for trademark infringement, if, without consent, he uses 'in commerce any reproduction, counterfeit, or colorable imitation of a registered mark' that 'is likely to cause confusion, or to cause mistake,

11

or to deceive.'" *Fla. Int'l University Board of Trustees v. Fla Nat'l University, Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016) (quoting 15 U.S.C. § 1114(1)). To prevail on trademark infringement and unfair competition claims under the Lanham Act, "the plaintiff must show the defendant used its mark in commerce without its consent and the unauthorized use would likely confuse or deceive the public." *Delta Sigma Theta Sorority, Inc. v. Bivens*, No. 2:14-cv-147-FtM-38CM, 2014 WL 1330018, at *2 (M.D. Fla. Apr. 1, 2014) (citations omitted); *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.* 931 F.2d 1472, 1475 n.3 (11th Cir. 1991) ("[T]he same facts support a cause of action for unfair competition as for trademark infringement."). And to prevail on a claim for trademark dilution, a plaintiff must show that: "(1) its mark is famous; (2) the defendant used the plaintiff's mark after the mark become famous; (3) the defendant's use was commercial and in commerce; and (4) the defendant's use of the mark has likely caused dilution." *Ferrara Candy Co. v. Exhale Vapor LLC*, No. 2:17-cv-512-FTM-38MRM, 2018 WL 6261504, at *4 (M.D. Fla. July 30, 2018).

  Here, Plaintiff has alleged that Defendants are using "a colorable imitation of the registered marks in connection with the sale, offering for sale, distribution, and advertising of foods and services in a manner likely to cause confusion, or to cause mistake, or to deceive" and that "Defendants' action and conduct, as set forth herein, constitute dilution" of the marks. (*See* Doc. 2 at ¶¶ 72, 78). But Plaintiff's registered mark is simply "Kava Culture" "without claim to any particular font style, size, or color. (Doc. 2-1 at 1). The registration is clear that no claim is made

to the exclusive right to use "KAVA" apart from the mark as shown.  (*Id.*). Defendants' business is called "The Kava Bar" (Doc. 2 at ¶ 39) without the word culture, and thus it does not appear to the Court that Plaintiff has established that Defendants have used a colorable imitation of their mark.  This is not to say that Plaintiff will not succeed on the merits, but rather that, at this juncture, the Court cannot find that Plaintiff has established a substantial likelihood of success on the merits.

Because Plaintiff has not established likelihood of success on the merits, the Court will not address the remainder of the factors as to this claim.  *See Schiavo ex. rel Schindler*, 403 F.3d at 1226 ("[I]njunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion.").

### III.  Violation of Florida's Deceptive and Unfair Trade Practices Act

*i.   Plaintiff has not shown a likelihood of success on the merits with respect to its Florida Deceptive and Unfair Trade Practices Act claim.*

To succeed on a FDUTPA claim, a plaintiff must show: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Young v. Community Health Systems, Inc.*, No. 8:22-cv-329-SCB-AEP, 2022 WL 18495250, at *5 (M.D. Fla. Sept. 16, 2022) (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. DCA 2006)). "FDUTPA applies only to actions that occurred within the state of Florida." *W.W. Sports Importadora Exportadora e Comercial Ltda v. BPI Sports, LLC*, No. 0:16-cv-60147-WPD, 2016 WL 9375202, at *5 (S.D. Fla. Aug. 11, 2016) (citing *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1330 (S.D. Fla. 2012)); *see also Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen., Dep't of Legal*

13

*Affairs, State of Fla.*, 761 So. 2d 1256, 1262 (Fla. DCA 2000)) ("As we read FDUTPA, it seeks to prohibit unfair, deceptive and/or unconscionable practices which have transpired within the territorial boundaries of this state . . . .").

Other than the fact that Defendants were trained in Florida (which is not the deceptive or unfair practice they are accused of), Plaintiff has not provided any evidence that any of the events leading to this Complaint took place in Florida. Rather, both of the Kava Bar locations are in Texas. (Doc. 2 at ¶¶ 19–20; Doc. 4 at 24). Again, this analysis does not necessarily indicate that Plaintiff will not succeed on the merits, but rather that, at this juncture, the Court cannot find that Plaintiff has established a substantial likelihood of success on the merits.

Because Plaintiff has not established likelihood of success on the merits, the Court will not address the remainder of the factors as to this claim. *See Schiavo ex. rel Schindler*, 403 F.3d at 1226 ("[I]njunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion.").

## IV. Unjust Enrichment

i. *Plaintiff has not shown a likelihood of success on the merits with respect to its unjust enrichment claim.*

In Florida, the elements of a cause of action for unjust enrichment are:

> (1) the [p]laintiff has conferred a benefit on the [d]efendant; (2) the [d]efendant has knowledge of the benefit; (3) the [d]efendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the [d]efendant to retain the benefit without paying fair value.

14

*Media Services Grp, Inc. v. Bay Cities Commc'ns, Inc.*, 237 F.3d 1326, 1331 (11th Cir. 2001) (citations omitted). Plaintiffs argue that "Defendants have used and continue to use the formerly-franchised location as a kava, elixir, and botanical business and continue to display the (or marks similar to the) Kava Culture Mark in order to confuse, mislead, and/or deceive others in violation of the Lanham Act" and that "Defendants should compensate Kava Culture for use of the Kava Culture Mark, confidential information, and good will as set forth in the Franchise Agreements." (Doc. 2 at ¶¶ 104-108).

This argument fails because "[r]ecovery on a theory of unjust enrichment . . . is only available when as a matter of fact there is no legal contract." *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1413 (11th Cir. 1998); *see also Certified Collectibles Grp, LLC v. Globant, LLC*, No. 8:19-cv-1962-SDM-AEP, 2021 WL 1214963, at *7 (M.D. Fla. Mar. 31, 2021) ("Because [plaintiff] plausibly alleges a breach of contract and because [plaintiff] has an adequate remedy for a breach of contract, [plaintiff] cannot state a claim for unjust enrichment.").

Because Plaintiff have not established likelihood of success on the merits, the Court will not address the remainder of the factors as to this claim. *See Schiavo ex. rel Schindler*, 403 F.3d at 1226 ("[I]njunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion.").

**V.     Notice**

Federal Rule of Civil Procedure 65(b)(1) indicates that the Court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney if two conditions are met. First, "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Second, the movant's attorney must certify in writing any efforts made to give notice and the reasons why it should not be required. Fed. R. Civ. P. 65(b)(1)(B).

The Court finds that Defendants have received notice of this action and the Motion, as evidenced by the Affidavit of Evan M. Goldman (Doc. 9) and the Supplemental Affidavit of Evan M. Goldman (Doc. 10). The affidavits illustrate numerous attempts at service made by Plaintiffs and certain of Defendants' attempts to avoid service. For example, Adam Allen of Allen & Associates let Plaintiff's attorney know that he represented Mr. Darrigan in this matter (*see* Doc. 9-3) but did not respond when asked if he would accept service of the Verified Complaint and Motion. (Doc. 9 at ¶¶ 4–6). A Return of Service was filed as to Mr. Qubty. (*See* Doc. 9-8). A Proof of Diligence was filed as to Mr. Darrigan, indicating that the driver of a pink SUV, upon seeing the process server, "quickly backed out of the driveway almost running over the smaller of the 2 female children" and when the process server identified himself, the man said "I don't think so. . . .and you need to leave" as he was driving away. (Doc. 10-1 at 2). A different process server indicated that on Monday, April 24, 2023, he attempted service on Mr. Darrigan,

16

Dar-Jkta Enterprises LLC, and Darrigan Investments, LLC three times in two different locations, a single family residence and a Kava Bar location. (Doc. 9-9 at 3–4). On Tuesday, April 25, 2023, that process server received a phone number that he believed was Mr. Darrigan's. (Doc. 9-9 at 4). He texted the phone number informing Mr. Darrigan that he needed to get court documents, "includ[ing] a TRO" to him as soon as possible, but no response was received that day. (Doc. 9-9 at 4).

Notwithstanding, even if no notice had been given, the Court finds, as described in this Order, that the facts in the amended complaint and the Affidavit of Evan M. Goldman (Doc. 9 at ¶¶ 11–13; Doc. 9-11) illustrate that immediate and irreparable harm has been ongoing and will continue before Defendants can be heard in opposition. Accordingly, notice was not required and the Court finds that entry of a temporary restraining order is appropriate even though Defendants have not appeared in this case or responded to the Motion.

VI.    **Security**

Federal Rule of Civil Procedure 65 states that the court may issue a temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

Plaintiff asks that the injunction be issued without security because Defendants agreed, in 16.02.09 of the Franchise Agreements, to waive the bond requirement. (Doc. 4 at 27). Section 16.02.09 of the Franchise Agreements states, in relevant part, as follows: "In the event of any action for a temporary or

17

permanent injunction to enforce this covenant, Franchisee hereby waives any requirement of a bond to the extent that any bond would exceed one hundred dollars." (Doc. 2-2 at 24, § 16.02.09; Doc. 2-3 at 27, § 16.02.09).

Where a contract waives requirement of a bond and no significant financial constraints are imposed by a TRO, courts in this district have waived the bond requirement. *See JTH Tax LLC v. Silva*, 8:20-cv-02288-MSS-AEP, 2020 WL 3266568, at *3 (M.D. Fla. Mar. 11, 2020) (waiving bond requirement). "Given Defendants' explicit [contractual] agreement to waive bond and the fact that any costs or damages likely sustained by Defendants result from their failure to abide by the provisions of the Franchise Agreement, [Plaintiffs] should not be required to post any bond." *See JTH Tax, LLC v. Gilbert*, No. 8:22-cv-625-CEH-AEP, 2022 WL 1619594, at *17 (M.D. Fla. May 12, 2022), *report and recommendation adopted* 2022 WL 3098407 (M.D. Fla. Aug. 4, 2022).

## CONCLUSION

In consideration of the foregoing, it is hereby

**ORDERED** that:

1. Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 4) is **GRANTED in part**, as set forth below, and **DENIED in part**, to the extent it seeks any greater relief than that set forth in this Order.

2. Plaintiff's Motion is granted to the extent that defendant David Darrigan is hereby temporarily restrained and enjoined from, and shall, to the extent applicable, immediately discontinue, individually or together with another,

directly or indirectly, on his own behalf or on behalf of or through any other person, sole proprietorship, or Entity (as defined in section 11.01 of the Denton Franchise Agreement), operating a competing business in violation of the non-compete provision of the Denton Franchise Agreement

3. This Temporary Restraining Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further date as set by the Court or stipulated by the parties, but, absent a request for an extension, shall not exceed fourteen (14) days from the date of entry of this order pursuant to Fed. R. Civ. P. 65(b)(2);

4. A hearing on the Motion for Preliminary Injunction shall be held on **May 11, 2023 at 11:00 a.m. (ET)** via Zoom Video Conference, and the parties will receive a separate Zoom invitation by e-mail;

5. On or before **May 4, 2023 at 5:00 p.m. (ET)**, the parties are directed to file a joint notice addressing whether they are amenable to holding all trials and hearings in this matter in this Court's Tampa Division.

6. Because Defendants agreed to waive the bond requirement under Section 16.02.09 of the Franchise Agreements to the extent that any bond would exceed one hundred dollars, and in the exercise of the Court's discretion, Plaintiff is not required to post a bond pursuant to Federal Rule of Civil Procedure 65(c);

7. Plaintiff shall serve copies of the Motion and this Order on Defendants' counsel via electronic mail and overnight mail and on Defendants, to the extent possible; and

8.  Any response or opposition to the Motion for Preliminary Injunction must be filed with the Court no later than **May 4, 2023**. Plaintiff shall file any reply in further support of their motion no later than **May 9, 2023**. Defendants are hereby on notice that failure to appear at the **May 11, 2023** hearing may result in the imposition of a preliminary injunction against them.[2]

**ORDERED** in Fort Myers, Florida on April 27, 2023.

*John L. Badalamenti*
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

---

[2] Having carefully reviewed the pleadings and entire file, the Court strongly recommends that the parties consider settlement negotiations. Should the parties jointly move this Court to continue the briefing deadlines and scheduled hearing, the Court would entertain such motion. The Court's intention is to encourage the parties to amicably resolve this matter to minimize their respective litigation expenses.